[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
{¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
{¶ 2} Relators-appellants Alvin Wallace and Surgical Skills, Inc., appeal from the decision of the Hamilton County Court of Common Pleas denying their motion for attorney fees in a public-records mandamus action against respondents- appellees, State Medical Board of Ohio and State Department of Insurance, for the disclosure of records, that were related to the Medical Board's and the Department of Insurance's investigations into allegations that Wallace and Surgical Skills, Inc., had been engaged in the unauthorized practice of medicine. They raise five assignments of error for our review.
{¶ 3} In their first and second assignments of error, Wallace and Surgical Skills argue that the trial court erred as a matter of law when it applied case law that was overruled by the Ohio Supreme Court in Stateex rel. Pennington v. Gundler.[1] In their third, fourth, and fifth assignments of error, Wallace and Surgical Skills challenge the trial court's findings that they had failed to show that their records request conferred a significant benefit upon the public, and that the State Medical Board's and the Department of Insurance's refusal to comply with their initial request for records was not unreasonable or made in bad faith. Because these assignments are intertwined, we address them together.
{¶ 4} In State ex rel. Fox v. Cuyahoga Cty. Hospital Sys.,[2]
the Ohio Supreme Court ruled that an award of attorneys fees pursuant to R.C. 149.43 is not mandatory, but discretionary. Because the supreme court characterized an award of fees under R.C. 149.43 as punitive in nature, the court ruled that a relator must demonstrate a sufficient benefit to the public to warrant the award.[3] Furthermore, the court has stated that a court must additionally consider "whether the party was acting in good faith and had [a] reasonable legal basis for its failure to comply with the statute."[4]
{¶ 5} The main thrust of Wallace and Surgical Skill's arguments is that the supreme court's decision in Pennington requires a court to award fees automatically under R.C. 149.43, if a relator meets the four-part test articulated in that case. We disagree for the following reasons.
{¶ 6} First, Pennington is factually distinguishable from this mandamus case brought by Wallace and Surgical Skills. In 1996, the Ohio Supreme Court stated in Pennington "that a court may award attorney fees pursuant to R.C. 149.43 where (1) a person makes a proper request for public records pursuant to R.C. 149.43, (2) the custodian of the public records fails to comply with the person's request, (3) the requesting person files a mandamus action pursuant to R.C. 149.43 to obtain copies of the records, and (4) the person receives the requested public records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot."[5]
{¶ 7} In Pennington, the public body had released documents to the relator only after the relator had filed a complaint in mandamus, but prior to judgment by the trial court.[6] While the supreme court had previously denied an award of attorney fees in these situations under the doctrine of mootness, the Pennington court overruled those cases and held that mootness was not a bar to recovering attorney fees.[7] The court reasoned that since the agency had conceded the records were public by releasing them voluntarily, the agency should have been punished by an award of attorney fees since it had acted unreasonably in forcing the relators to file suit.[8]
{¶ 8} In this case, the State Medical Board and the Department of Insurance never conceded that the records requested were public. In fact, they vehemently contested the public nature of the records in the trial court, on appeal to this Court,[9] and on appeal to the Ohio Supreme Court.[10] Furthermore, they did not release any documents to Wallace and Surgical Skills until after the Ohio Supreme Court had remanded the case to the trial court. Thus, we fail to see howPennington applies to this case.
{¶ 9} Furthermore, since its decision in Pennington, the Ohio Supreme Court has continued to hold that a relator is not entitled to fees under R.C. 149.43 unless he can show that his request has conferred a benefit on the public and that the public entity's refusal to provide the records was both unreasonable and made in bad faith.[11] In Stateex rel. Dillery v. Icsman,[12] for example, the court stated that even though a relator's request had met the Pennington factors, he "must still have demonstrated a sufficient benefit to the public to warrant a fee award, and [that] courts may consider the reasonableness of the custodian's failure to comply, because attorney fees are punitive in nature."[13] Consequently, we overrule the first and second assignments of error.
{¶ 10} We next address whether the trial court abused its discretion when it held that Wallace and Surgical Skills were not entitled to attorney fees because they had not conferred a significant benefit on the public and because the Medical Board's and the Department of Insurance's failure to comply with the request was not unreasonable or made in bad faith.
{¶ 11} Although the record does not reveal why Wallace and Surgical Skills sought the records, they have not argued that the records were sought for public use or distribution. Instead, they have contended that because their request for records had prompted the Ohio Supreme Court for the first time to address a person's right to records from the State Medical Board and the Department of Insurance, and because the court subsequently held that they were entitled to some of these records, they conferred a benefit upon the public.
{¶ 12} The trial court found that even though Wallace and Surgical Skills may have conferred a benefit upon the public, by taking their case to the Ohio Supreme Court, which addressed issues of first impression, this public benefit was minimal given the unique facts of the case. In doing so, the trial court recognized that the primary purpose of Wallace and Surgical Skills's request was to discover information for a private suit against Rick Wilson, an insurance investigator who had been looking into allegations that Wallace and Surgical Skills had engaged in the unauthorized practice of medicine. The trial court additionally found that the State Medical Board and the Department of Insurance had not acted unreasonably or in bad faith when they refused to provide the requested records to Wallace or Surgical Skills, "considering the dearth of case law on the waiver of the Medial Board's privilege and the Insurance Department confidentiality statute."
{¶ 13} Having reviewed the case law and the record, we agree with the trial court. Even if Wallace and Surgical Skills conferred a benefit upon the public, which we deem questionable,[14] the State Medical Board's and the Department of Insurance's refusal to provide the records was not unreasonable given the absence of settled law on the duty of disclosures.[15] Because the trial court did not abuse its discretion in denying the motion for attorney fees, we overrule the third, fourth, and fifth assignments of error.
{¶ 14} Finally, we note that, prior to oral argument in this case, Wallace and Surgical Skills filed a motion to strike certain portions of the appendix attached to the Medical Board's and the Department of Insurance's amended brief. In their motion, Wallace and Surgical Skills, argued that Exhibit C, Exhibit D, and Exhibit E were not part of the record in the trial court and thus should not be considered by this court. Our examination of the record indicates that these three exhibits were indeed not a part of the trial record.[16] Therefore, this court, being advised in the premises, grants the motion to strike, but only as it applies to Exhibits C, D, and E of the Appendix.
 {¶ 15} For the foregoing reasons, we affirm the judgment of the trial court.
{¶ 16} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Sundermann and Winkler, JJ.
[1] 75 Ohio St.3d 171, 1996-Ohio-161, 661 N.E.2d 1049.
[2] (1988), 39 Ohio St.3d 108, 529 N.E.2d 443.
[3] Id. at 112.
[4] White v. Clinton Cty. Bd. of Commrs., 77 Ohio St.3d 1267, 1268,1997-Ohio-250, 675 N.E.2d 471.
[5] Pennington, supra, 75 Ohio St.3d at 174.
[6] Id.
[7] Id.
[8] Id.
[9] See State ex rel. Wallace v. State Med. Bd. of Ohio (June 11, 1999), 1st Dist. No. C-980557.
[10] See State ex rel. Wallace v. State Med. Bd. of Ohio,89 Ohio St.3d 431, 2000-Ohio-213, 732 N.E.2d 960.
[11] See State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. ofCommrs., 80 Ohio St.3d 134, 139, 1997-Ohio-353, 684 N.E.2d 1222; State exrel. Rasul-Bey v. Onunwor, 94 Ohio St.3d 119, 122, 2002-Ohio-67,760 N.E.2d 421.
[12] 92 Ohio St.3d 312, 2001-Ohio-193, 750 N.E.2d 156.
[13] Id. at 316.
[14] State ex rel. Olander v. French, 79 Ohio St.3d 176, 179-180,1997-Ohio-171, 680 N.E.2d 962 (Ohio Supreme Court refused to award attorney fees where relator sought public records from former employer for use in personal legal battle with that former employer).
[15] See State ex rel. Wadd v. Cleveland, 81 Ohio St.3d 50, 54-55,1998-Ohio-444, 689 N.E.2d 25.
[16] Exhibit C, Respondent's Memorandum Contra Relator's Motion for Award of Attorney's Fees, and Exhibit D, Respondent's Memorandum Contra Objections to the Magistrate's Decision Denying Attorney's Fees, were actually filed with the trial court, but contained the wrong case number, and although they appear on the computerized docket of the trial court, they are not a part of the bound version of the record before us. Exhibit E, which consists of documents related to the Semertziades interview, was never filed with the trial court.