[Cite as *Parrish v. Village of Glendale*, 2018-Ohio-2913.]

| | |
|---|---|
| KEVIN L. PARRISH | Case No. 2018-00191PQ |
| Requester | Judge Patrick M. McGrath |
| v. | <u>DECISION</u> |
| VILLAGE OF GLENDALE | |
| Respondent | |

{¶1} Before the court are written objections filed on May 25, 2018, by respondent Village of Glendale to a special master's report and recommendation of May 18, 2018 concerning a dispute related to the access of public records. For reasons set forth below, the court determines that (1) the village's objections should be overruled in part and sustained in part, (2) the special master's report and recommendation should modified as set forth herein, and (3) the special master's report and recommendation, as modified in this decision, should be adopted.

## I. **Background**

{¶2} On February 12, 2018, requester Kevin L. Parrish sued respondent Village of Glendale, alleging that on January 16, 2018 he was denied access to a public record. The court appointed attorney Jeffery W. Clark as a special master in the cause. The court also referred the case for mediation. After mediation failed to successfully resolve all disputed issues, the court returned the case to the docket of Special Master Clark.

{¶3} The village moved to dismiss Parrish's complaint with prejudice, claiming that it had responded to all of Parrish's public-records requests. On May 18, 2018, the special master issued a report and recommendation wherein the special master recommended denying the village's motion to dismiss and wherein the special master determined the cause on the merits. In the report and recommendation, the special master states: "The claim before the court is * * * limited to records allegedly missing

from the production on January 16, 2018, and otherwise specified in the January 20, 2018 letter." (Report and Recommendation, 2.) And in the conclusion of the report and recommendation, the special master stated: "Upon consideration of the pleadings and attachments I recommend that the court deny the Village's motion to dismiss. I further recommend that the court deny requester's claim for production of records as moot. I further recommend that the court find that the Village failed to provide the records promptly, and that costs therefore be assessed to respondent." (Report and Recommendation, 4.)

{¶4} The court sent copies of the special master's report and recommendation by U.S. certified mail to Parrish and to the village's counsel. According to the court's records, Parrish and the village's counsel received the court's mailings on May 21, 2018. Four days later—on May 25, 2018—the village, through its counsel, filed written objections to the special master's report and recommendation. In a certificate of service, the village's counsel certified that a copy of the village's objections was served to Parrish "via First Class United States Mail." The court also sent a copy of the village's written objections to Parrish. Parrish did not file a timely response to the village's written objections.

## II. Law and Analysis

{¶5} R.C. 2743.75(F)(2) governs objections to a report and recommendation issued by a special master of this court relative to a public-records dispute. Pursuant to R.C. 2743.75(F)(2):

> Either party may object to the report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested. Any objection to the report and recommendation shall be specific and state with particularity all grounds for the objection. If neither party timely objects, the court of claims shall promptly issue a final order adopting the report and recommendation, unless it determines that there is an error of law or other defect evident on the face of the report and recommendation. If either party timely objects, the other party may file with the clerk a response within seven business

days after receiving the objection and send a copy of the response to the objecting party by certified mail, return receipt requested. The court, within seven business days after the response to the objection is filed, shall issue a final order that adopts, modifies, or rejects the report and recommendation.

Upon review, the court finds that the village submitted its written objections within seven days after receiving a copy of the special master's report and recommendation in accordance with requirements contained in R.C. 2743.75(F)(2). However, the village's written objections do not fully comport with procedural requirements contained in R.C. 2743.75(F)(2) because the village failed to send its written objections to Parrish by certified mail, return receipt requested. Because the village failed to fully comply with procedural requirements contained in R.C. 2743.75(F)(2) when it filed its written objections, the village's written objections may be subject to dismissal. *See e.g., State ex rel. White v. Bechtel*, 99 Ohio St.3d 11, 2003-Ohio-2262, 788 N.E.2d 634, ¶ 5 (stating that "[t]he requirements of R.C. 2969.25 are mandatory, and failure to comply with them subjects an inmate's action to dismissal"). However, in the interest of justice the court will review the village's written objections.

{¶6} By the village's objections, the village "objects to the Special Master's [report and recommendation (R&R)] to the extent that it finds that [the village] 'did not produce the additional records requested in Parrish's January 20, 2018 letter until six weeks after the request' and concludes that [the village] 'failed to comply with its obligation under R.C. 149.43(B)(1) to promptly prepare [public] records for inspection. [The village] also objects to the Special Master's R&R to the extent that it recommends that [the village's] Motion to Dismiss * * * be denied and that costs be assessed against [the village]." (Objections, 1.)

### A. The special master did not err by recommending that the village's motion to dismiss should be denied.

{¶7} In support of a recommendation to deny the village's motion to dismiss, the special master stated: "While respondent may defend a public records claim by proving that all responsive records have been provided subsequent to the filing of the

complaint, mootness is not proven on the face of the complaint." (Report and Recommendation, 3.) The special master's reasoning is consistent with the standard for considering a dismissal under Civ.R. 12(B)(6), which prohibits a court from relying on allegations or evidence outside a complaint. *See Sheridan v. Metro. Life Ins. Co.*, 182 Ohio App.3d 107, 2009-Ohio-1808, 911 N.E.2d 950, ¶ 15 (10th Dist.) (stating that in considering dismissal under Civ.R. 12(B)(6), a trial court "may not rely on allegations or evidence outside the complaint. * * * Rather, the trial court may only review the complaint and may dismiss the case only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recover"). The village's contention that the special master erred by failing to grant the village's motion to dismiss is not well-taken. The court determines that this portion of the village's written objections should be overruled.

**B. The court disagrees with the special master's determination that the village failed to comply with its obligation under R.C. 149.43(B)(1) to promptly prepare public records for inspection by clear and convincing evidence.**

{¶8} Besides challenging the special master's recommended disposition concerning the village's motion to dismiss, the village also challenges (1) the special master's finding that the village did not produce additional records requested in Parrish's letter of January 20, 2018 until six weeks after the request, (2) the special master's conclusion that the village failed to comply with an obligation under R.C. 149.43(B)(1) to promptly prepare records for inspection, and (3) the special master's recommendation that costs should be assessed against the village.

{¶9} In the report and recommendation, the special master stated:

> The Village did not produce the additional records requested in Parrish's January 20, 2018 letter until six weeks after the request. The Village provides no explanation for the delay, or any indication that the records required legal review or redaction prior to public inspection. I find that the Village failed to comply with its obligation under R.C. 149.43(B)(1) to promptly prepare these records for inspection.
>
> * * *

> I further recommend that the court find that the Village failed provide the records promptly, and that costs therefore be assessed to respondent.

(Report and Recommendation, 4.)

{¶10} To prevail in a public-records action in this court, a requester is required to establish by clear and convincing evidence that a requester has a clear legal right to disputed public records and that a respondent has a clear legal duty to provide the disputed records. *See Hurt v. Liberty Twp.*, 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 27-30 (determining that R.C. 2743.75 does not define the burden of proof in an action brought in this court under R.C. 2743.75, that in a public-records mandamus action under R.C. 149.43(C)(1)(b), a relator must establish by clear and convincing evidence a clear legal right to the requested records and that a respondent has a clear legal duty to provide them, and that the standard of proof required in cases brought under R.C. 149.43(C)(1)(b) should apply to a public-records dispute brought under R.C. 2743.75). The Ohio Supreme Court has held that clear-and-convincing evidence "is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 471, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Thus, by the village's remaining objections, the village raises this issue: whether the special master's determination that the village failed to comply with an obligation under R.C. 149.43(B)(1) to promptly prepare records for inspection is supported by a measure or degree of proof that is more than a mere preponderance of the evidence—but not to the extent of such certainty as is required "beyond a reasonable doubt"—and that produces a firm belief or conviction that the village failed to comply with its obligation under R.C. 149.43(B)(1) to promptly prepare certain public records for inspection.

{¶11} R.C. 149.43 governs the availability of public records. Pursuant to R.C. 149.43(B)(1), upon request and subject to R.C. 149.43(B)(8), all public records

responsive to a request "shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." The term "promptly" is not defined for purposes of the statute. *See* R.C. 149.43; *see also* R.C. 149.011 (definitions as used in R.C. Chapter 149). As the Supreme Court of Ohio stated in *State ex rel. Wadd v. City of Cleveland*, 81 Ohio St.3d 50, 53, 689 N.E.2d 25 (1998): "The word 'promptly' is not defined in R.C. 149.43 or any other applicable statute. Therefore, it must be accorded its usual, normal, or customary meaning. *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351, 1353; R.C. 1.42. 'Promptly' means 'without delay and with reasonable speed' and its meaning 'depends largely on the facts in each case.' Black's Law Dictionary (6 Ed.1990) 1214." *Accord State ex rel. Consumer News Servs. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 37 (stating: "Although the word 'promptly' is not defined by applicable statute, its customary meaning is '"without delay and with reasonable speed"' and this meaning '"depends largely on the facts in each case."' *Wadd*, 81 Ohio St.3d at 53, 689 N.E.2d 25, quoting Black's Law Dictionary (6ᵗʰ Ed.1990) 1214").

{¶12} Because a review of the facts of a case is required to determine whether a public office or a person responsible for public records acted "promptly," *see Wadd* at 53, *State ex rel. Consumer News Servs* at ¶ 37, it follows that a delay of six weeks before records responsive to a public-records request are prepared or made available for inspection does not necessarily constitute a violation of R.C. 149.43(B)(1). Here, a review of the record in this case discloses several events and circumstances that relate to the village's production of documents for Parrish's inspection on January 16, 2018, and January 20, 2018:

- **December 21, 2017:** Parrish made a public records request to the village that (1) asked for certain pages missing from a packet of information that the village provided to him concerning a public-records request of December 7, 2017, and (2) asked for certain other records, including records from Televac. (Attachment 4 to Parrish's complaint; affidavit of Walter Cordes, Village Administrator, dated May 1, 2018, paragraph 3.)

- **January 16, 2018:** The village provided copies of the missing pages from Parrish's request of December 7, 2017, and Parrish picked up these copies. (Attachment 4, to Parrish's complaint.)

    The village made records available to Parish for his inspection at the village offices. (Cordes Affidavit, at paragraph 7.) The village's administrator has attested: "With respect to Mr. Parrish's December 21, 2017, public records request to Glendale, Glendale responded to that request by making all of the records requested by Mr. Parrish available to him for his inspection on January 16, 2018, at the Village Offices. * * * The provided records included all Televac records in Glendale's possession from 2010 to present, including video recorded by Televac. While the Televac records for 2015 had been incorrectly included with the Televac records for 2014, the records were made available to Mr. Parrish as they were kept and the 2015 Televac records were present that morning when Mr. Parrish came to review the records." (Cordes Affidavit, at paragraph 7.)

    When Parrish reviewed the records on January 16, 2018, the village's counsel appears to have been present. In the village's motion to dismiss, the village's counsel represented: "Undersigned counsel was personally present for Parrish's January 16, 2018, review of public records at Glendale's Village Offices. * * *. Undersigned counsel's presence has been necessary due to Parrish seeking public records, and seeking to ask questions of Glendale's employees about such records, relating to the subject matter of ongoing civil litigation between Parrish and Glendale in the Hamilton County, Ohio, Court of Common Pleas. Undersigned counsel also represents Glendale in connection with that ongoing civil litigation. * * * Undersigned counsel was also present for Parrish's March 2, 2018, review of public records at Glendale's Village Offices." (Motion to Dismiss Complaint filed May 1, 2018, 3, footnotes 1, 2.)

- **January 20, 2018:** The village received a public records request from Parrish. (Affidavit of Walter Cordes, Village Administrator, dated May 1, 2018, paragraph 3; Attachment 2 to Parrish's complaint.). With his request, Parrish appended a memorandum addressed to the village that states:

    On January 16, 2018 I was at the Village of Glendale's Admin Office to view records that where [sic] requested on December 21, 2017. After viewing these records I noticed that for 2015 there was no file. I asked David B. Shaver (Lawyer for the village of Glendale) about this file (2015 Sewer + Water). This File was not provided for me at this time (January 16, 2018)[.]

    "At this time I would formally request from the village of Glendale the 2015 file for all sewer + water issues or a letter of explanation as to why there was no activity for 2015. Also records for the budget for 2015

as it relates to sewer + water + all other utilities as related to the Village of Glendale. Thank-you."

(Memorandum dated January 20, 2018, from Parrish to the Village of Glendale.)

- **January 25, 2018:** Kevin Bell, Chief Utility Operator, Village of Green and Parrish apparently had a telephone conversation. (Attachment 1 to Complaint) (Letter dated January 26, 2018, from Kevin Bell, Chief Utility Operator, Village of Green, to Parrish.)

- **January 26, 2018:** Bell composed a letter to Parrish that states: "As a follow up to our phone conversation of January 25, 2018, and in accordance with your oral request that future communications to you from the Village of Glendale be in writing, please allow this letter to serve as confirmation that records responsive to your above-referenced public record request, a copy of which is enclosed for your reference, have been collected and will made available for your inspection in the Village Office at a time and date to be arranged.  Please advise me of several dates and times during the Village of Glendale working hours that are convenient to you so that we may jointly coordinate a meeting."

- **February 12, 2018:** Parrish filed a complaint against the village in this court.

(Complaint.)

- **March 2, 2018:**  The village made records available to Parrish.  (Cordes affidavit, dated March 2, 2018, paragraph 8.)  The village's administrator has averred: "On March 2, 2018, Glendale made all of the records requested by Mr. Parrish on December 21, 2017, available to him again for his inspection at the Village Offices.  These records included the 2015 Televac records which had since been re-filed apart from the 2014 Televac records.  In addition, Glendale also made available to Mr. Parrish for his inspection those additional public records requested by Mr. Parrish's January 20, 2018, public records request."  (*Id.*)

**{¶13}** In the special master's report and recommendation, the special master stated: "The Village provides no explanation for the delay, or any indication that the records required legal review or redaction prior to public inspection." (Report and Recommendation, 4.)  It is true that, in the village's motion to dismiss, the village does not appear to have indicated to the special master that the requested records required legal review or redaction prior to public inspection.  However, footnotes in the village's motion to dismiss do reveal that the village and Parrish were engaged in ongoing civil

litigation when Parrish made his public-records request, and that Parrish purportedly asked questions of the village's employees about the public records while he conducted his inspection of records. In the court's view, these circumstances are significant because, in view of the civil litigation and Parrish's purported questioning of the village's employees, the village reasonably could have sought guidance from legal counsel and, if such guidance had been sought, some delay in the production of records in this case arguably could be deemed reasonable. *See, e.g., State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 17 (stating that "[g]iven the broad scope of the records requested, the governor's office's decision to review the records before producing them, to determine whether to redact exempt matter, was not unreasonable"). Moreover, Parrish's request to have communications from the village reduced to writing arguably could account for some delay in the inspection of records because, in accordance with Parrish's request, instead of orally contacting Parrish to arrange a time for inspection of the requested records, the village was required to make such arrangements by written correspondence, which required a village employee to compose a document, proofread it, and then prepare it for mailing to Parrish—thereby delaying an opportunity for Parrish to inspect the requested records.

{¶14} Furthermore, whether there was even a delay in the production of requested documents in this case is debatable because, according to the village's administrator, on January 16, 2018, Parrish had an opportunity to inspect records "as they were kept" by the village (and these records included the records requested by Parrish, which were apparently misfiled), and, on March 2, 2018, the records reviewed by Parrish included the records that had been misfiled on January 16, 2018. (Cordes's affidavit dated May 1, 2018, paragraph 7, 8.)

{¶15} Finally, in the court's view, the village did not engage in dilatory tactics to avoid complying with R.C. 149.43(B)(1)'s requirement to promptly prepare public records responsive to a request and make the records available for inspection at all reasonable times during regular business hours. *See* R.C. 149.43(B)(1) (stating in part

that "[u]pon request and subject to [R.C. 149.43(B)(8)], all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours").  Here, as evidenced by Chief Utility Operator Kevin Bell's letter of January 26, 2018 to Parrish, Bell informed Parrish that "records responsive to your above-referenced public record request * * * have been collected and will be made available for your inspection in the Village Office at a time and time to be arranged" and Bell asked Parrish to advise Bell of "several dates and times during the Village of Glendale working hours that are convenient to you so that we may jointly coordinate a meeting."  Bell's letter demonstrates the village's efforts to promptly to comply with its obligation under R.C. 149.43(B)(1).  And the record before the court shows that eleven weekdays after January 26, 2018—on February 12, 2018—Parrish apparently responded to Bell's invitation to provide the village with dates and times that were convenient to him by filing a lawsuit against the village, alleging that the village denied him access to public records on January 16, 2018.

{¶16} For reasons set forth above, the court determines that the special master's conclusion that clear and convincing evidence supports a finding that the village failed to comply with its obligation under R.C. 149.43(B)(1) to promptly prepare public records for inspection should not be adopted.  And the court further determines that a portion of the village's objections should be sustained.

### III. Conclusion

{¶17} Accordingly, the court holds that the Village of Glendale's written objections of May 25, 2018 should be sustained in part and overruled in part.  The court finds well-taken the special master's recommendation that the village's motion to dismiss should be denied and the special master's recommendation that Parrish's claim for production of records should be denied as moot.  However, the court rejects the special master's finding that the village failed to comply with its obligation under R.C. 149.43(B)(1) to

promptly prepare records for inspection and the court rejects the special master's recommendation that costs should be assessed against the village.

PATRICK M. MCGRATH
Judge

[Cite as *Parrish v. Village of Glendale*, 2018-Ohio-2913.]

KEVIN L. PARRISH

    Requester

    v.

VILLAGE OF GLENDALE

    Respondent

Case No. 2018-00191PQ

Judge Patrick M. McGrath

<u>JUDGMENT ENTRY</u>

{¶18} For the reasons set forth in the decision filed concurrently herewith, and upon independent review of the objected matters, the court OVERRULES in part and SUSTAINS in part respondent Village of Glendale's objections of May 25, 2018, to Special Master Jeffery W. Clark's report and recommendation of May 18, 2018. The court MODIFIES Special Master Clark's Report and Recommendation as stated in the concurrently filed decision. The court ADOPTS Special Master Clark's Report and Recommendation, as modified in the concurrently filed decision. Judgment is rendered in favor of respondent Village of Glendale. Court costs are assessed against requester Kevin L. Parrish. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

**Filed June 20, 2018**
**Sent to S.C. Reporter 7/24/18**